## LANE *v.* LANE.

### (*Knoxville.* October 30, 1897.)

1. **LIFE INSURANCE.** *Ownership of benefit certificate.*

   The beneficiary named in the certificate issued by a benefit society, upon the life of its member, acquires not a vested interest or right to the benefit, but a mere expectancy or inchoate gift, revocable at the pleasure of the assured, when under the laws of the society the member has the right to surrender his certificate and take out another. (*Post, pp. 642, 643.*)

   Cases cited and approved: Tennessee Lodge *v.* Ladd, 5 Lea. 720; Catholic Knights *v.* Kuhn, 91 Tenn., 214; Life Assn. *v.* Wynn, 96 *Ib.*, 227; Handwerker *v.* Diermeyer, *Ib.*, 619; Sofge *v.* Supreme Lodge, 98 *Ib.*, 446.

2. **SAME.** *Brother named as beneficiary in benefit certificate.*

   A brother of a member of a benefit society, although not dependent on the latter, may be named as the beneficiary in a certificate upon such member's life, consistently both with the rules of public policy and with the laws of the society, requiring the beneficiary to be a "husband or wife, affianced husband or affianced wife, relatives or persons dependent upon the applicant," and that the benefit "shall be paid to the family, orphans, or dependents," as the member may direct. (*Post, pp. 643–648.*)

   Cases cited: Quinn *v.* Supreme Council, *ante*, p. 80; 94 U. S., 289, 457; 104 U. S., 927; 6 Gray, 399.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. H. B. LINDSAY, Ch.

TAYLOR & ROBERTS for Lizzie Lane.

GREEN & SHIELDS and T. L. CARTY for S. L. Lane.

McALISTER, J. This is a contest over the proceeds of a benefit certificate in the American Legion of Honor, which is being waged between the widow and brother, respectively, of a deceased member.

W. A. Lane, now deceased, became a member of the American Legion of Honor by connecting himself with a council of the order located at Knoxville. The American Legion of Honor was incorporated under the laws of the State of Massachusetts, for the following benevolent purposes, to wit: "(1) To unite, fraternally, all persons of sound bodily health and good moral character, who are socially acceptable, between eighteen and sixty-five years of age; (2) to give all moral and material aid in its power to its members and those dependent upon it; (3) to educate its members socially, morally, and intellectually; (4) to establish a fund for the relief of sick and distressed members; (5) to establish a benefit fund, from which, on satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding $5,000 shall be paid to the family, orphans, or dependents, as the member may direct." Among the by-laws of the order law 133 provides that members in good standing may surrender their benefit certificates and have new ones issued, subject

Lane v. Lane.

to the provisions of the by-laws.    Such change to be made upon petition to the supreme secretary, signed by the member desiring to make the change, attested by the secretary, under the seal of the council, in accordance with the form provided.    Each petition shall fix a time when the change of beneficiary shall take effect.    When no time is stated such change shall take effect on the date of the delivery of the application for change to the secretary of the council.

The record discloses that on May 15, 1892, the American Legion of Honor issued a benefit certificate to W. A. Lane for the sum of $2,000, payable at his death to his wife, Mrs. Lizzie Lane, the present complainant.    This certificate was delivered to her, and she kept it until October, 1892, when her husband called for it.    He surrendered it to the order, and, upon his application in writing, another certificate was issued, payable to his brother, the respondent, S. L. Lane.    W. A. Lane, the assured, died July 1, 1896.    The record further shows that at the time the second certificate was issued W. A. Lane was in bad health and unable to pay his dues. His brother agreed to keep the second certificate alive, and aid in the support of W. A. Lane's family.    This agreement, the Court of Appeals finds, S. L. Lane faithfully kept and performed.    W. A. Lane, the assured, died while in good standing in the order, with the certificate payable to his brother outstanding and in force against the order.

15 P—41

The Court of Chancery Appeals, upon the facts stated, held that the beneficiaries of members in such orders where, under their laws, the members have the right to surrender their certificates and take out others, have no vested interests or rights in the same. That Court adjudged that the brother, under the second certificate made payable to him, was entitled to the fund, and dismissed complainant's bill, affirming the decree of the Chancellor.

This holding was in accord with the settled law on this subject, and with numerous adjudications of this Court. We held in *Sofge* v. *Supreme Lodge Knights of Honor*, decided at Nashville last term, that "who shall be the beneficiaries of their members under such certificates of insurance, is, in the absence of a statute, determined by their laws, so long as they do not violate some public policy of the State. When, therefore, a benefit certificate, issued by an order of this character, is called or canceled, in conformity to its laws, it ceases to have any legal existence, and the substituted certificate can alone be recognized." In that case we said: " It is wholly immaterial to inquire why the certificate was canceled, whether upon sufficient or insufficient reasons. So long as complainant had no vested interest in it, such considerations are wholly apart from the real controversy in the case." So long as the certificate itself, as well as the rules of the order, reserve to the assured the ultimate right of cancellation and disposition of the certificate, the

beneficiary can have only a mere expectancy or in-choate gift, revocable at any moment by the act of the assured. *Tennessee Lodge* v. *Ladd*, 5 Lea, 720; *Catholic Knights* v. *Kuhn*, 7 Pick., 214; *Life Assn.* v. *Wynn*, 12 *Ib.*, 227; *Handwerker* v. *Diermeyer*, *Ib.*, 619; *Sofge* v. *Supreme Lodge*, 98 Tenn., 446.

Complainant assigns as error the action of the Court of Chancery Appeals in sustaining the decree of the Chancellor refusing to allow an amendment to the bill offered at the hearing. The amendment offered charged that defendant, S. L. Lane, brother of deceased, was not a relation or person dependent upon W.. A. Lane, deceased, within the contempla-tion of the by-laws and charter of the American Legion of Honor, and could not, therefore, be a beneficiary in his policy, the by-laws requiring that the beneficiary be a husband, or a wife, child, affianced husband, affianced wife, relative or person dependent upon the applicant. Said certificate being, therefore, void, said S. L. Lane not having any lawful, insurable interest in the life of W. A. Lane, deceased, the first certificate payable to the wife, and delivered into her possession, became vested, and could not be divested out of her without her knowledge and consent.''

The case chiefly relied on in support of the con-tention offered in the amendment is *Quinn* v. *Su-preme Council*, decided at Jackson, April, 1897. In that case it appeared that a certificate holder in a

benefit association, by agreement with one having no insurable interest in his life—neither a relative nor a creditor—permitted such certificate to be canceled, took another payable to himself, and assigned it to such person, who reimbursed the assured for past payments and kept the certificate alive in his own interest, in expectation of profits contingent upon · the death of the assured. It was held that such an assignment was void as against public policy. "Such a transaction," said Judge Beard, "is purely speculative on the part of the assignee, entered upon by him as a wagering interest, from which the largest profit is to be derived from the termination of the insured's life, and the heaviest loss to accrue from its long continuance. A transaction of this character is obnoxious to the law as violative of a sound public policy, and should not be sustained."

It will be observed that in that case the beneficiary was a stranger who had no insurable interest in the life of the assured, and who entered into the contract for purely speculative purposes. In that case this Court said "that, in reaching this conclusion, it is not necessary for us to differ from the many cases which hold that a party, in good faith, both in old line insurance companies as well as in such a society as the Catholic Knights of America, may select a beneficiary who has neither the claim of blood or debt upon him, and cause the policy or certificate to be made payable to such party, for that is not the present case." So it is clear that

case does not support the contention of complainant. The contention of complainant is rested largely upon the language of the charter and by-laws of the order. The charter of the American Legion of Honor provides that the benefit "shall be paid to the family, orphans, or dependents," as the member may direct. The by-laws of the order designate as beneficiaries "husband or wife, affianced husband or affianced wife, relatives, or persons dependent upon the applicant."

The insistence made on behalf of complainant is that the term relative, used in the by-law, is shown by the context to mean such relatives as are dependent upon the assured. In Bacon on Benefit Societies, Secs. 246, 247, it is said: "In all cases the member may have as broad a range of choice in selecting his beneficiary as the organic law of his society gives him. If there is nothing in the charter or by-laws of the organization, or in the statutes of the State, restricting the appointment, the member may designate whomsoever he pleases, and no one can question the right. In determining whether the designated beneficiary comes within the class specified or not, the charter and by-laws shall be construed liberally, so as to carry out the benevolent purposes of the organization."

In the case of *Ætna Life Ins. Co.* v. *France,* 94 U. S., 289, this question was considered by the Supreme Court of the United States. In that case the action was brought by David France and Lucetta

P., his wife, to recover the amount of a policy of insurance for $10,000, issued by the Ætna Life Insurance Company on the life of Andrew J. Chew, of Philadelphia, dated September 13, 1865, and payable to the said Lucetta, who was Chew's sister. On the question whether Lucetta P. France had an insurable interest in the life of Chew the conceded facts were that she was his sister, as stated in the policy; that at the time the policy was issued she was married to David France, and in no way dependent on her brother for support; that the latter was earning his living as a ladies' shoemaker, and was of small means. The Court held that Chew had a right to take out a policy on his own life for his sister's benefit, and she had a right to advance him the necessary means to do so. As between strangers, or persons not thus necessarily connected, such a transaction would be evidence to go to the jury, from which, according to the circumstances of the case, they might, or might not, infer that it was gambling. But as between brother and sister, or other near relations desirous of thus providing for each other, and, as said by Chief Justice Shaw, "presumed to be actuated by considerations of strong morals and force of natural affection between near kindred, operating often more efficaciously than those of positive law, the case is divested of that gambling aspect which is presumed where there is nothing but a speculative interest in the death of another without any interest in his life to counter-

balance it.  On this ground, we hold that where, as in this case, a brother takes out a policy on his own life for the benefit of his sister, it is totally immaterial what arrangement they choose to make between themselves about the payment of the premiums.  The policy is not a wager policy.''

Again, in the case of *Warnick* v. *Davis*, 104 U. S., 927, it was said, viz.: ''It is not easy to define with precision what will in all cases constitute an insurable interest so as to take the contract out of the class of wager policies.  It may be stated generally, however, to be such an interest, arising from the relation of the party obtaining the insurance, either as creditor or surety of the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life.  It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child and a child in the life of his parent; a husband in the life of his wife, and a wife in the life of her husband.  The natural affection in cases of this kind is considered as more powerful and operating more effectually to protect the life of the assured than any other consideration.  But in all cases there must be a reasonable ground, founded upon the relation of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the

life insured, otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of assured." See also, *Loomis* v. *Insurance Co.*, 6 Gray (Mass.), 399; *Conn. Mutual Ins. Co.* v. *Shalfer*, 94 U. S., 457.

We find nothing in the charter or by-laws of this order that prohibited the selection of a brother as beneficiary. On the contrary, we think the words, "family" and "relative," used in the organic law, clearly permitted this, and that complainant's contention that only dependent relatives are included is unsound.

There is no error in the record and the decree is affirmed.