CENTURY LIFE INSURANCE COMPANY v. CUSTER.

Opinion delivered November 12, 1928.

M. R. *Perry* and B. G. *Clanton,* for appellant.

*John P. Vezey,* for appellee.

HUMPHREYS, J. This suit was brought by appellee against appellant in the circuit court of Hempstead County to recover $275, as beneficiary, on a life insurance policy alleged to have been issued to his brother, William Custer, by the North Carolina Mutual Life Insurance Company, on August 31, 1925, and on January 1, 1927, reinsured by said North Carolina Company with appellant, a mutual insurance corporation.

Appellant filed an answer, denying any liability on the policy. The cause was sent to a jury upon the pleadings, the testimony introduced by each party, and the instructions of the court, which resulted in a verdict and judgment against appellant for $275, from which is this appeal.

Appellee applied and procured from the North Carolina Mutual Life Insurance Company, through its agent, James Talbert, who resided at Hope, Arkansas, and who had authority to collect premiums on all policies issued in the Hope district, an insurance policy on the life of his brother, William Custer, for his (appellee's) benefit when his brother died. Neither was dependent on the other. Appellee's brother was residing elsewhere at the time the policy was procured, and had no knowledge of it. The policy procured was dated August 31, 1925, and, according to the undisputed testimony, appellee paid the monthly premium thereon until November, 1926.

Appellee testified that he paid the monthly dues or premiums on the policy to James Talbert until August,

1927, at which time he first received news of his brother's death, his brother having died on March 17, 1927.

James Talbert testified that appellee failed to pay the premiums on said life insurance policy in November, 1926, and that he canceled the policy in December following. He also testified that he sold William B. Custer a life insurance policy for appellant on April 18, 1927, upon which he collected monthly premiums from appellee from the date of the policy until August, 1927.

D. D. Shackleford, the supervisor of books and records of appellant, testified that the North Carolina record showed that the policy lapsed on December 13, 1926; that the lapse sheet made up by J. C. Talbert, the then agent of the North Carolina Company, showed deceased insured's policy No. 408854 lapsed before the reinsurance contract went into effect on January 1, 1927.

Appellee testified that William B. Custer never purchased an insurance policy through Talbert from appellant, and that he (appellee) never paid premiums on any policy on the life of his brother except the policy issued August 30, 1925, by the North Carolina Mutual Life Insurance Company.

James Talbert was introduced as a witness by appellee, in the course of the trial, and testified that, prior to January 1, 1927, he was the agent of the North Carolina Mutual Life Insurance Company, with authority to collect premiums on all policies in force in the Hope district, and that, after that time, he was employed by appellant, it having reinsured all life policies of the North Carolina Mutual Life Insurance Company and succeeded to its business, and was instructed by appellant to collect premiums on all policies taken over by it from the North Carolina Insurance Company. The reinsurance contract was introduced in evidence, which, among other things, provided that appellant should be liable upon policies issued by the North Carolina Mutual Life Insurance Company which were in full force on January 1, 1927.

Appellant requested an instructed verdict in its favor upon the theory: (1) That brothers do not have an insurable interest in the life of each other by virtue of the relationship alone. (2) Because the undisputed evidence showed that the policy sued upon lapsed in December, 1926, and, for that reason, was not one of the policies included in the reinsurance contract on January 1, 1927. (3) Because the court permitted provisions of the policy to be proved by secondary evidence.

(1). The question of whether brothers have insurable interests in the lives of each other, by virtue of the relationship alone, has never been decided by this court. Brothers are so closely related that they are naturally interested in the preservation of the life of each other. Generally they will lay down their life for each other. As a rule they care for each other in illness to the extent, if necessary, of furnishing all needed comforts and medical aid. It would be contrary to human nature for them to speculate on the death of each other, so it may well be said that their contracts for insurance on the life of each other should not be classed as wagering contracts. It was ruled in the case of *Ætna Life Ins. Co.* v. *France,* 94 U. S. 561, affirming the case of *France* v. *Ætna Life Ins. Co.,* 9 Fed. Cas. 657, that a sister, by virtue of the relationship alone, has an insurable interest in the life of her brother. The doctrine announced by the Supreme Court of the United States in the case of *Ætna Life Ins. Co.* v. *France, supra,* is supported by the cases of *Hosmer* v. *Welch,* 107 Mich. 407, 65 N. W. 280, 67 N. W. 504; *Williams* v. *Fletcher,* 26 Tex. Civ. App. 85, 62 S. W 1082; *Trenton Mutual Life & Fire Ins Co.* v. *Johnson,* 24 N. J. Law 576; *Lane* v. *Lane,* 99 Tenn. 639, 42 S. W. 1058; *Goodwin* v. *Massachusetts Mut. Life Ins. Co.,* 73 N. Y. 408; *Equitable Life Ins. Co.* v. *Hazlewood,* 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 A. S. R. 893; *Hahn* v. *Supreme Lodge of the Pathfinder,* 136 Ky. 823, 125 S. W. 259.

We think the doctrine announced by the Supreme Court of the United States is sound, and have therefore adopted it.

(2). The undisputed evidence does not reflect that the policy lapsed in December, 1926. Appellee testified to the contrary. He said that he paid the premium every month from the date of the policy to August, 1927, at which time he first learned that his brother had died in March, 1927. If the jury believed his testimony in this respect, it may reasonably have inferred, from the further fact that the agent was instructed to collect premiums on all policies issued by the North Carolina Mutual Life Insurance Company which were in force on January 1, 1927, that the policy in question was included in the reinsurance contract. It is true that the witnesses introduced by appellant testified that the policy lapsed and that no premiums were collected on the policy in question for appellant, but this conflict in the testimony presented a disputed question of fact for determination by the jury. This issue of fact was sent to the jury upon proper instructions, and the finding of the jury cannot be disturbed by this court on appeal, as the jury's verdict was supported by some substantial evidence.

(3). It is true that the court permitted some of the provisions of the policy to be proved by oral testimony, but not until it was shown that the policy was returned to appellant or its agent with the proof of death of the insured, and that demand had been made upon it for the policy before the trial of the cause, so that the policy itself might be introduced in evidence. With the policy in possession, appellant cannot be heard to complain because the court permitted its provisions to be established by secondary evidence.

Appellant was not entitled to a peremptory instruction on any theory advanced by it.

Appellant also contends for a reversal of the judgment on account of alleged errors in instructions submitting other disputed questions of fact. We have

examined the instructions carefully, and find the court correctly instructed the jury under the facts in the case, except submitting to them the question of whether or not appellee had an insurable interest in the life of his brother. Under the undisputed facts in the case that was a question of law, which the court itself should have settled. The instruction, however, was favorable to appellant, and it has no right to complain.

No error appearing, the judgment is affirmed.